IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| VIRGINIA TRANSPORTATION CORP., ) <br>                       Plaintiff    ) <br>                                 ) <br>           v.                        ) <br>                                 ) <br> PACCAR INC., PETERBILT MOTORS ) <br> COMPANY, PETERBILT OF KNOXVILLE, ) <br> INC. d/b/a THE PETERBILT STORE-- ) <br> GREENVILLE, CUMMINS, INC. ) <br> successor by merger to CUMMINS ) <br> ATLANTIC, LLC, and ALLISON ) <br> TRANSMISSION, INC. ) <br>                     Defendants    ) | No. 1:19-cv-00445-MSM-LDA |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge

Invoking diversity jurisdiction, 28 U.S.C. § 1332, and asserting an amount in controversy of $6 Million, Virginia Transportation Corp. ("VTC") has sued a collection of companies involved in its purchase of thirty (30) tractor trailer trucks, allegedly defective with respect to their engines and transmissions. According to the (amended) complaint (ECF Nos. 45 and 46): VTC is a Rhode Island company; PACCAR/Peterbilt Motors ("PACCAR") is a Delaware Corporation operating in Texas and Washington State; Peterbilt of Knoxville ("dealer"), a Tennessee corporation operating in South Carolina, is PACCAR's dealer in these vehicles; CUMMINS ("Cummins"), which provided the engines, is both incorporated in and operates in Indiana; and finally, ALLISON ("Allison"), which provided the transmissions, is

1

incorporated in and is located in Delaware. To place yet another pushpin on this "map," the tractors were purchased to be operated exclusively on a 44-mile loop located entirely in Alabama.

All defendants have moved to dismiss on several grounds. Common to them is a challenge to this Court's exercise of personal jurisdiction over any of them. The inquiry then focuses on Rhode Island's long-arm statute, R.I.G.L. 1956 § 9-5-33(a), which asserts jurisdiction over any nonresident corporation "that shall have the necessary minimum contacts with the state of Rhode Island." Personal jurisdiction must satisfy both the forum state's long-arm statute and the dictates of due process. *Daimler AG v. Bauman,* 571 U.S. 117, 125 (2014). But because Rhode Island's statute is coterminous with the requirements of due process, *Rose v. Firstar Bank,* 819 A.2d 1247, 1250 (R.I. 2003), it is the same inquiry here. *Harlow v. Children's Hospital,* 432 F.3d 50, 57 (1st Cir. 2005) (Maine's long-arm statute authorized jurisdictional reach to the "fullest extent" of constitutional parameters).

Personal jurisdiction may be either "specific" – resulting from a nexus between the conduct supporting the cause of action and the forum state – or "general" – resulting from the defendant's "continuous and systematic pursuit of general business activities in the forum state." *Cossaboon v. Maine Medical Ctr.,* 600 F.3d 25, 31-32 (1st Cir. 2010). When a plaintiff claims specific jurisdiction, the cause of action must arise out of or be related to the defendant's specific contacts with the forum state. *Harlow,* 432 F.3d at 57; *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 290 (1st Cir. 1999). Where general jurisdiction is demonstrated,

2

the specific conduct giving rise to the claim need not relate to the defendant's conduct in the forum state: general personal jurisdiction means there is jurisdiction over the defendant for all matters. General jurisdiction "broadly subjects the defendant to suit in the forum state's courts 'in respect to all matters, even those that are unrelated to the defendant's contacts with the forum.'" *Id.* at 288. Both specific and general jurisdiction look only at contacts that manifest "purposeful availment" of the benefits of the forum state. *Cossaboon,* 600 F.3d at 32. "Purposeful availment" activities are those that are so directed at the forum state as to make it reasonable for the defendant to have expected to be subject to its jurisdiction. *Id.*

Here, there is no specific jurisdiction. The tractors were never in Rhode Island, and whatever defects they have, if any, never manifested in Rhode Island. If any warranties were breached, the claim at the core of this action, they were not breached by the condition of the trucks in Rhode Island. The mere signing of the purchase and warranty contracts by VTC in Rhode Island – assuming that is the location of its signing[1] – is not sufficient. *Phillips v. Prairie Eye Ctr.,* 530 F.3d 22 (1st Cir. 2008). In *Phillips* the First Circuit found no jurisdiction in Massachusettts for an action arising out of an employment contract even though the plaintiff was in Massachusetts when he signed the contract. *Id.* at 28. "[T]he mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not

---

[1] An affidavit submitted by VTC alleges that the contract was executed by its Accounting Manager who works at corporate headquarters in West Warwick, Rhode Island. (ECF No. 56-1 at p. 51 ¶¶1-2.) Drawing all inferences in favor of the plaintiff, the Court therefore accepts that the contract was signed on behalf of VTC in Rhode Island.

suffice, in and of itself, to establish jurisdiction in the plaintiff's home state." *Phillips Exeter Acad.,* 196 F.3d at 290, citing *Burger King v. Rudzewicz,* 471 U.S. 462, 478-79 (1985).

General jurisdiction is also lacking. General jurisdiction has three components: (a) sufficient contacts between the defendant and the forum state; (b) the purposefulness of those contacts; and (c) the reasonableness of exercising jurisdiction in the forum state. *Cossaboon,* 600 F.3d at 32. Contacts are sufficient if they demonstrate that the defendant conducts "continuous and systematic" activity in the forum state. *Id.* General jurisdiction cannot be justified here based on the extent of contacts with Rhode Island. The mere fact that Peterbilt sells to Rhode Island companies, and that Cummins and Allison supply parts both for those trucks and to their own authorized dealers in Rhode Island, cannot constitute "continuous and systematic" activity. *Daimler* is instructive here. In that case, Argentinian residents sued Daimler AG in California for injuries allegedly resulting from Daimler's collaboration with Argentinian security forces to kidnap, detain and torture them. Although Daimler had multiple dealerships in California, the Court found its contacts insufficient. That Daimler had authorized dealerships in all 50 states did not mean it was "at home" in any of them. *Id.* at 139, n.20. Peterbilt's single dealer in Johnston, who had no connection to this purchase, is not sufficient. VTC asserts that it has bought hundreds of trucks that Peterbilt has shipped to Rhode Island in

the past.[2] Some cases have looked at the percentage of business an out of state entity does in the forum state, but as the Complaint recites that Peterbilt has sold more than one million trucks worldwide, hundreds in Rhode Island is a mere fraction of its business.[3] (ECF No. 45, ¶8.) *Compare, Cossaboon*, 600 F.3d at 38 (the fact that 1.23% of patients, and 2.9% of inpatient admissions, were Maine residents did not subject Massachusetts hospital to general jurisdiction in Maine). The mere fact that both Cummins and Allison ship parts into Rhode Island (ECF No. 45, ¶¶ 9 and 10), as they do all over the country and world, is not sufficient.

None of these defendants have sufficient contacts with Rhode Island to be "at home" in this state and, therefore, the action against them cannot find a "home" in this Court.

Rather than dismiss this action, however, the Court orders the transfer of it to the District of Alabama where, in this Court's opinion, there is specific personal jurisdiction. 28 U.S.C. § 1631. At oral hearing, all defendants acknowledged that Alabama would have specific personal jurisdiction, and none objected to transfer. The Court assumes that the plaintiff prefers transfer to outright dismissal. If that is not correct, the plaintiff may voluntarily dismiss the action once it is docketed in Alabama.

---

[2] The plaintiff stressed this fact at oral hearing on the Motion. It is not, however, the extent of the *plaintiff's* business that is relevant here; it is the extent of the *defendant's* business. It is the *defendant* who must have purposefully availed itself of the forum jurisdiction.

[3] Assuming the most favorable fact for the plaintiff, that "hundreds" means 900, that would constitute .09% (less than 1%) of Peterbilt's total sales.

IT IS SO ORDERED:

_Mary S. McElroy_
Mary S. McElroy,
United States District Judge

Date: March 10, 2021